IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-55

No. COA20-687

Filed 1 February 2022

Durham County, No. 19-CVS-1721

ERIC MILLER, Plaintiff,

v.

LG CHEM, LTD., LG CHEM AMERICA, INC., FOGGY BOTTOM VAPES LLC,
CHAD & JACLYNN DABBS d/b/a SWEET TEA’S VAPE LOUNGE, DOE
DEFENDANTS 1-10, Defendants.

Appeal by plaintiff from an order entered 20 April 2020 by Judge Michael J.

O’Foghludha in Durham County Superior Court. Heard in the Court of Appeals 5

October 2021.

The Paynter Law Firm, PLLC, by Stuart M. Paynter, Celeste H.G. Boyd, David
D. Larson, Jr., and Sara Willingham, for plaintiff-appellant.

Lewis Brisbois Bisgaard & Smith LLP, by Christopher J. Derrenbacher, for
defendants-appellants LG Chem, Ltd., and LG Chem America, Inc.

Schwaba Law Firm, by Andrew J. Schwaba, and Cohen, Milstein, Sellers &
Toll, PLLC, by Adam Langino, for amicus curiae North Carolina Advocates for
Justice.

No briefs filed by defendants Foggy Bottom Vapes LLC, Chad & Jaclynn Dabbs
d/b/a Sweet Tea’s Vape Lounge, and Doe Defendants 1-10.

TYSON, Judge.

¶1 Eric Miller (“Plaintiff”) appeals the trial court’s decision granting LG Chem,
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

Ltd.’s (“LG Chem”) and LG Chem America, Inc.’s (“LG America”) (together,

“Defendants”) motion to dismiss for lack of personal jurisdiction. We affirm.

I. Background

¶2 Defendant LG Chem is a South Korean company, which manufactures and

markets lithium-ion batteries. LG Chem alleges it has no meaningful contacts or

connections to North Carolina.

¶3 Defendant LG America is a Delaware corporation, which sells and distributes

petrochemical products and materials in the United States. Its direct sales and

distribution to North Carolina are limited to petrochemical products.

¶4 LG Chem became aware in early 2016 that single 18650 lithium-ion cells it

had manufactured were being used as unauthorized standalone rechargeable

batteries in e-cigarette “vape” pens. LG Chem learned an 18650 battery had caused

a fire inside a vape pen user’s bag.

¶5 LG Chem redesigned the 18650 battery cells to reduce their risk of fire, added

warning labels to the batteries in September 2016. It also added a warning to its

website cautioning against the unauthorized use of standalone 18650 cells in vape

pens. LG Chem then took steps to limit its distributors and corporate customers from

selling its manufactured 18650 lithium cells for standalone use in e-cigarette vape

devices.

¶6 Plaintiff purchased a vape pen and LG Chem 18650 battery cell from
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

Defendant, Foggy Bottom Vapes, LLC, (“Foggy Bottom”) in Bahama, North Carolina

in late 2016 or early 2017. On 23 October 2017, Plaintiff purchased a second LG

Chem 18650 battery cell for use in his vape pen from Defendants Chad and Jaclynn

Dabbs, d/b/a Sweet Tea’s Vape Lounge (“Sweet Tea”) in Creedmoor, North Carolina.

One of the 18650 battery cells allegedly exploded in Plaintiff’s pocket, causing severe

burns along his left leg on 4 March 2018.

¶7 Plaintiff filed suit in January 2019, seeking damages from both LG Defendants

under various theories of products liability, ordinary negligence, and breach of the

implied warranty of merchantability. The complaint asserts jurisdiction over the LG

Defendants based upon the following allegations:

10. . . . At all times relevant to this Complaint, LG
Chem . . . designed and manufactured 18650-sized
cylindrical lithium-ion batteries and caused those batteries
to be distributed and sold throughout the United States,
including within the State of North Carolina.

11. . . . At all times relevant to this Complaint, LG
[America] did substantial and continuous business in the
State of North Carolina by marketing, distributing, and
selling or causing to be sold lithium-ion batteries in the
State.

....

17. . . . [O]n information and belief, [LG Chem] engages in
substantial activity within this State by placing its
lithium-ion batteries into the stream of commerce with the
knowledge, understanding, and/or expectation that they
will be purchased by consumers in the State. According to
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

LG Chem. . . . the company “built a network for production,
sales and R&D not only within Korea but also in major
locations around the globe, conducting business all over the
world,” with approximately 6% of LG
Chem[’s] . . . worldwide business in 2015 taking place in
the United States. The U.S. District Court for the Western
District of North Carolina has found that LG Chem . . . “has
knowingly and intentionally used nationwide distribution
channels for its products, with the expectation that its
products will be sold throughout the country, including in
the state of North Carolina.”

18. . . . [O]n information and belief, [LG America] engages
in substantial activity with this State by causing its
lithium-ion batteries to be distributed and sold in the
State, and by placing its lithium-ion batteries into the
stream of commerce with the knowledge, understanding,
and/or expectation that they will be purchased by
consumers in the State. The U.S. District Court for the
Western District of North Carolina has found that:

[LG America] has a physical presence in the state of
NC in the form of being registered to do business
here, having a registered process agent here, using
property in this state for storage, and paying state
taxes at least once. Additionally, [LG America] has
participated in the economic markets of this state
through its sales to NC customers.

¶8 LG Defendants moved to dismiss Plaintiff’s complaint for lack of personal

jurisdiction pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure.

Plaintiff pursued discovery against LG Defendants, serving both with interrogatories

and requests for production of documents. LG Defendants gave limited responses to

Plaintiff’s interrogatories, but only LG Chem responded to Plaintiff’s requests for
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

production.

¶9 Plaintiff filed and served motions to compel LG Defendants to provide more

comprehensive responses to his interrogatories and requests for production, and

asked the trial court to order additional jurisdictional discovery rather than allow LG

Defendants’ pending motions to dismiss. Plaintiff then noticed his motions to compel

and LG Defendants’ motions to dismiss for hearing on 11 March 2020.

¶ 10 The parties submitted evidence to the trial court in advance of the hearing. LG

Defendants filed affidavits attesting their 18650 cells were “never designed,

manufactured, distributed, advertised, or sold for use by individual consumers as

standalone, replaceable, rechargeable batteries in electronic cigarette or vaping

devices,” nor did they ever “authorize [any distributor, retailer, or re-seller] to sell or

distribute any lithium-ion cells for use by individual consumers as standalone,

replaceable, rechargeable batteries in electronic cigarette or vaping devices.”

¶ 11 Plaintiff filed affidavits tending to show LG Defendants’ contacts with North

Carolina. The alleged contacts include: (1) the widespread availability of 18650

batteries in vape shops across the State; (2) LG America authorized shipments of

18650 batteries to or through North Carolina; (3) LG Chem marketing materials

available online in the State and advertising 18650 batteries; (4) a press release from

a North Carolina lithium hydroxide company announcing a deal to supply LG Chem

with materials for battery applications; and (5) decisions from other courts rejecting
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

LG Defendants’ personal jurisdiction arguments or compelling additional

jurisdictional discovery.

¶ 12 The trial court took the matter under advisement and allowed the parties to

submit supplemental affidavits pending resolution of the parties’ motions. LG Chem

filed a supplemental affidavit concerning its efforts to limit the unauthorized use of

18650 batteries in vaping devices.

¶ 13 The trial court considered the arguments of counsel, the pleadings, briefs, and

filings of the parties, including all affidavits and submissions, and entered an order

allowing LG Defendants’ motions to dismiss on 20 April 2020. The order contains

ten findings of fact that LG Chem never designed, manufactured, distributed,

advertised, or sold lithium-ion cells “for use by individual consumers as standalone,

replaceable, rechargeable batteries in electronic cigarette or vaping devices[.]” The

trial court granted LG Defendants’ motion to dismiss for lack of personal jurisdiction.

Plaintiff appeals.

II. Jurisdiction

¶ 14 Appellate jurisdiction is proper pursuant to N.C. Gen. Stat. § 1-277(b) (2021).

III. Issues

¶ 15 Plaintiff argues the trial court erred in holding it lacked personal jurisdiction

over the LG Defendants and the trial court abused its discretion in dismissing the

case for lack of personal jurisdiction without compelling the LG Defendants to further
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

respond to discovery requests.

IV. Argument

A. Jurisdiction

¶ 16 The Supreme Court of the United States recently addressed a similar

jurisdictional issue. Plaintiff’s claims against a non-resident defendant “must arise

out of or relate to the defendant’s contacts’ with the forum.” Ford Motor Co. v. Mont.

Eighth Judicial Dist. Ct, __ U.S. __, __, 209 L. Ed. 2d 225, 234 (2021) (citations

omitted).

¶ 17 A defendant’s conduct to establish personal jurisdiction is relevant only if it

establishes “a connection between the forum and the specific claims at issue.” Id. at

__, 209 L. Ed. 2d at 241 (citation and parentheses omitted). Under the “arise out of

or relate to” standard, “some relationships will support jurisdiction without a causal

showing,” but “[t]hat does not mean anything goes.” Ford Motor Co., __ U.S. at __,

209 L. Ed. 2d at 236 (emphasis supplied). “In the sphere of specific jurisdiction, the

phrase ‘relate to’ incorporates real limits, as it must to adequately protect defendants

foreign to a forum.” Id.
¶ 18 To establish personal jurisdiction over a non-resident defendant in a product-

liability action, the defendant’s contact with the forum State must involve the precise

product at issue. Id. at __, 209 L. Ed. 2d at 238. The trial court correctly ruled

Plaintiff had failed to make the required showing to establish personal jurisdiction
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

over these non-resident Defendants.

B. Connection between the Forum and the Specific Claims

¶ 19 Plaintiff’s and our dissenting colleague’s argument, analysis, and conclusion

show the “anything goes” danger Justices Kagan, Alito, and Gorsuch warned of in

Ford: no “real limits” on unlimited liability in a foreign jurisdiction over a non-

resident defendant with no contacts thereto. Id. at __, 209 L. Ed. 2d at 236. As is

shown here: “The mere fact that [a defendant] was ‘connected’ to the manufacture

and distribution of [a product] is not sufficient to support a conclusion that [the

defendant] purposefully availed itself of North Carolina jurisdiction by injecting its

products into the stream of commerce.” Cambridge Homes of N. C. Ltd. P’ship. v.

Hyundai Constr., Inc., 194 N.C. App. 407, 416, 670 S.E.2d 290, 297 (2008). The trial

court correctly found and concluded all Plaintiff has shown here was LG Chem

manufacturing and “injecting its products into the stream of commerce.” Id.
¶ 20 The plaintiff’s claims “must arise out of or relate to the defendant’s contacts

with the forum.” Ford Motor Co., __ U.S. at __, 209 L. Ed. 2d at 234 (citations and

quotation marks omitted). Conduct is relevant only if it establishes “a connection

between the forum and the specific claims at issue.” Id. at __, 209 L. Ed. 2d at 241
(citation and parentheses omitted). “When there is no such connection, specific

jurisdiction is lacking regardless of the extent of a defendant’s unconnected activities

in the State.” Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

Cty., __ U.S. __, 198 L. Ed. 2d 395 (2017).

C. Deliberate, Systematic, and Extensive Market Service

¶ 21 In the absence of a causal connection between a non-resident defendant’s

contacts with the forum State and the plaintiff’s claims, the defendant must

“deliberately,” “systematically,” and “extensively” serve a market in the forum State

“for the very [product] that the plaintiffs allege malfunctioned.” Id. at __, 209 L. Ed.

2d at 237-38.

¶ 22 This Court’s recent opinion in Cohen v. Cont’l Motors, Inc., __ N.C. App. __,

2021-NCCOA-449, 864 S.E.2d 816 (2021) is instructive and supports the trial court’s

conclusion that insufficient jurisdictional contacts occurred in the facts before us. In

Cohen, the plaintiffs were killed when their aircraft’s starter adapter failed, causing

a loss of oil pressure and ultimate failure of the engine. Id. ¶ 2, __ N.C. App. at __,

864 S.E.2d at 818. Continental Motors, Inc. was domiciled in Delaware, but had

engaged in nearly 3,000 sales and earned nearly $4 million in revenue from North

Carolina consumers. Id. ¶ 6, __ N.C. App. at __, 864 S.E.2d at 819. Continental

Motors provided and maintained a paid electronic subscription account that gave

North Carolina-based clients access to its manuals and technical support. Id. ¶ 6, __

N.C. App. at __, 864 S.E.2d at 819. Continental Motors had worked closely with

fourteen North Carolina online maintenance subscribers, including the company

which installed the starter adapter into the plaintiff’s aircraft. Id. ¶ 6, __ N.C. App.
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

at __, 864 S.E.2d at 819. Although altered by a rebuilder, the starter adapter that

failed and was the primary cause of the crash was a component of the defendant’s

original production. Id. ¶ 9, __ N.C. App. at __, 864 S.E.2d at 820.

¶ 23 Unlike Continental Motors, LG Chem is not a United States-based company.

LG Chem manufactures and sells lithium-ion batteries which are designed and sold

solely to corporate and industrial businesses for inclusion in battery packs used for

specified products. The trial court found, and Plaintiff does not challenge, LG Chem

does not manufacture, market, sale, nor distribute these batteries for individual or

consumer sales or for uses in the vape devices for which they were inserted.

¶ 24 LG Chem does not promote, distribute nor sell these batteries to consumers for

use as singular or standalone batteries for individual uses. In discovery, LG Chem

showed it “has not sold or distributed . . . 18650 lithium-ion cells to or intended for

North Carolina between January 1, 2014 and March 4, 2018.” Plaintiff made no

showing to refute these assertions.

¶ 25 LG Chem has never maintained an office in North Carolina, has never

registered to do business here, and has no property or employees here. In short, LG

Chem has no contacts whatsoever with or within North Carolina, other than products

it manufactured ending up in North Carolina, solely through the actions of unrelated

third-parties of its products for uses LG Chem never intended. Plaintiff does not

challenge nor refute these facts.
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

¶ 26 The other defendant affected and before this Court is LG America, a Delaware

corporation that sells and distributes petrochemical products and materials in the

United States. Its direct sales and distribution to North Carolina are limited solely

to petrochemical products, no batteries or battery components, and it properly

maintains a registered agent with the North Carolina Secretary of State for that

business.

¶ 27 LG America has never distributed nor sold 18650 cells directly to anyone in

the United States or within North Carolina. It has no office, property, or employees

in North Carolina. In discovery, LG America asserted:

[LG America] did not manufacture, design,
distribute, or sell the product allegedly in question. [LG
America] assisted in the sale of LG 18650 battery cells to
B2B Networks, Inc., Cna International, Inc., and Green
Battery Technologies LLC in Illinois and Texas from
approximately January 2012 to May 2016. [LG America]
has never sold or distributed LG 18650 battery cells in, or
to anyone in, North Carolina.

D. N.C. Gen. Stat. § 1-75.4(1)(d)

¶ 28 Plaintiff does not refute these assertions but alleges specific personal

jurisdiction over LG Defendants pursuant to N.C. Gen. Stat. § 1-75.4(1)(d) (2021).

This statute grants the courts of North Carolina jurisdiction “over defendant[s] to the

extent allowed by due process.” Dillon v. Numismatic Funding Corp., 291 N.C. 674,

676, 231 S.E.2d 629, 631 (1977). In the end, this inquiry is a constitutional due
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

process test, “the question of statutory authority [under N.C. Gen. Stat. § 1-75.4(1)(d)]

collapses into the question of whether [the defendant] has the minimum contacts with

North Carolina necessary to meet the requirements of due process.” Sherlock v.

Sherlock, 143 N.C. App. 300, 303, 545 S.E.2d 757, 760 (2001) (alterations in original)

(citations and quotation marks omitted).

¶ 29 LG Chem and LG America moved to dismiss Plaintiff’s complaint for lack of

personal jurisdiction and supported their motions with affidavits from an authorized

representative, which contradicted the relevant jurisdictional allegations in

Plaintiff’s complaint. The trial court granted LG Defendants’ motion to dismiss. The

court’s decision was based upon affidavits, other supplemental materials, and

arguments submitted by both parties.

V. Personal Jurisdiction

A. Standard of Review

¶ 30 “The standard of review of an order determining personal jurisdiction is

whether the findings of fact by the trial court are supported by competent evidence

in the record[.]” Bell v. Mozley, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011)

(alterations original) (citations and quotation marks omitted). “We review de novo

the issue of whether the trial court’s findings of fact support its conclusion of law that

the court has personal jurisdiction over a defendant.” Id. (citation omitted). “When

jurisdiction is challenged, plaintiff has the burden of proving that jurisdiction exists.”
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

Stetser v. TAP Pharm. Prods. Inc., 162 N.C. App. 518, 520, 591 S.E.2d 572, 574 (2004)

(citation omitted) (emphasis supplied).

¶ 31 “[I]t is essential in each case that there be some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws.” Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 542 (1985) (citation omitted).

B. Stream of Commerce

¶ 32 “The mere fact that [a defendant] was ‘connected’ to the manufacture and

distribution of [a product] is not sufficient to support a conclusion that [the defendant]

purposefully availed itself of North Carolina jurisdiction by injecting its products into

the stream of commerce.” Cambridge, 194 N.C. App. at 416, 670 S.E.2d at 297.

¶ 33 Plaintiff’s stream of commerce theory cannot displace the fundamental rule

that “it is the defendant’s conduct that must form the necessary connection with the

forum State that is the basis for jurisdiction over him.” Walden v. Fiore, 571 U.S. 277,

285, 188 L. Ed. 2d 12, 21 (2014).

¶ 34 In Ford, the consumer products at issue were a Ford Explorer and a Ford

Crown Victoria, “the very vehicles,” not all Ford vehicles. Ford __ U.S. at __, 209 L.

Ed. 2d at 238. The Court emphasized that Ford “advertised, sold, and serviced those

two car models in both [forum] States for many years.” Ford __ U.S. at __, 209 L. Ed.

2d at 238. “In other words, Ford had systematically served a market in Montana and
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

Minnesota for the very vehicles that the plaintiffs allege malfunctioned.” Ford __ U.S.

at __, 209 L. Ed. 2d at 238.

¶ 35 Here, the product at issue is an 18650 lithium-ion cell, not all models of

“lithium-ion batteries generally,” or every product that LG Chem manufactures. LG

Chem’s 18650 lithium-ion cells are not consumer products; they are manufactured,

marketed, distributed, and sold solely as industrial component products.

¶ 36 Plaintiff lists purported contacts between LG Chem and North Carolina, but

he makes no attempt to demonstrate the necessary connection between these contacts

and Plaintiff’s claims. Moreover, LG Chem never served as a market in North

Carolina for standalone, removable consumer batteries or made “purposeful efforts

to flood North Carolina” with standalone consumer batteries. Whereas Ford urged

consumers in the forum States to buy the specific products, Explorer and Crown

Victoria vehicles, “[b]y every means imaginable[.]” Id. at __, 209 L. Ed. 2d at 237. LG

Chem never advertised, sold, or distributed any lithium-ion cells to anyone for sale to

individual consumers for use as standalone, removable batteries for the devices

Plaintiff purchased.

VI. Abuse of Discretion

¶ 37 The second issue before this Court is whether the trial court abused its

discretion by declining to compel further responses to Plaintiff’s discovery requests.

A. Standard of Review
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

¶ 38 This Court reviews trial court rulings “on discovery matters under the abuse

of discretion standard.” In re J.B., 172 N.C. App. 1, 14, 616 S.E.2d 264, 272 (2005).

“A trial court may be reversed for abuse of discretion only upon a showing that its

ruling was so arbitrary that it could not have been the result of a reasoned decision.”

Id. (citation omitted). Plaintiff makes no showing of the trial court’s abusing its

discretion.

B. No Jurisdiction

¶ 39 Plaintiff did not allege facts to support assertion of jurisdiction over LG Chem

or LG America. Plaintiff’s “injecting its products into the stream of commerce” theory

of jurisdiction over Defendants violates due process, is contrary to established

precedents, and is invalid. Cambridge, 194 N.C. App. at 416, 470 S.E.2d at 297.

Additional jurisdictional discovery was not warranted.

VII. Conclusion

¶ 40 Plaintiff bears the burden of proving jurisdiction. Plaintiff has failed to show

any causal connection, purposeful availment or personal jurisdiction between North

Carolina and LG Defendants. The trial court’s order dismissing Plaintiff’s complaints

against LG Defendants for lack of specific personal jurisdiction is properly affirmed.

It is so ordered.

AFFIRMED.

Chief Judge STROUD concurs.
 MILLER V. LG CHEM

2022-NCCOA-55

Opinion of the Court

Judge INMAN dissents with separate opinion.
 No. COA20-687 – Miller v. LG Chem.

INMAN, Judge, dissenting.

¶ 41 Plaintiff, a North Carolinian, bought an LG 18650 battery in North Carolina,

was injured by that battery in North Carolina, and has now sued the manufacturer

and its American subsidiary—the LG Defendants1—in North Carolina. Because, in

my view, Plaintiff’s complaint contains unrebutted allegations sufficient to establish

the LG Defendants’ minimum contacts with North Carolina, I respectfully dissent

from the majority’s decision affirming the dismissal of Plaintiff’s complaint at this

early stage of litigation.

¶ 42 I also dissent from the majority’s holding that the trial court did not abuse its

discretion in denying Plaintiff’s motion for further discovery. The trial court

exercised its discretion on the sole basis that Plaintiff could not show a causal link

between his claims and the LG Defendants’ contacts with North Carolina. That

limited view of specific jurisdiction has been repudiated by the United States

Supreme Court. Ford Motor Co. v. Montana Eighth Judicial District, ___ U.S. ___,

___, 209 L. Ed. 2d 225, 236 (2021). The Supreme Court’s holding in Ford Motor Co.

is binding on our appellate review of the trial court’s order, even though it was

entered before Ford Motor Co. was decided. I would reverse the trial court’s order

and remand the matter for further proceedings or, failing that, remand the matter to

1 I refer to both Defendants LG Chem, Ltd. and LG Chem America, Inc. as the “LG

Defendants” to avoid confusion with the other named defendants in this case. I otherwise
employ the same defined terms set forth in the majority opinion.
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

the trial court to consider, in its sound discretion, whether jurisdictional discovery is

warranted in light of the law of specific jurisdiction as it exists following Ford Motor

Co.

I. FACTUAL AND PROCEDURAL HISTORY

¶ 43 I supplement the majority opinion to describe in further detail the trial court’s

order dismissing Plaintiff’s complaint. The order contains ten findings of fact

collectively establishing: (1) LG Chem has never designed, manufactured,

distributed, advertised, or sold lithium-ion cells “for use by individual consumers as

standalone, replaceable, rechargeable batteries in electronic cigarette or vaping

devices;” (2) “LG Chem has tried to limit the distribution of its 18650 lithium-ion cells

for use by consumers as standalone, replaceable, rechargeable batteries in electronic

cigarettes and vaping devices” and has never authorized them to be sold or

distributed for such use; and (3) LG America’s sales in North Carolina “are limited to

petrochemical products” and “have no relationship to the distribution of 18650

lithium-ion cells for sale to North Carolina consumers for use in electronic cigarettes

and vaping devices.”

¶ 44 Based on its findings, the trial court concluded as a matter of law that

Plaintiff’s injury did not “arise from” the LG Defendants’ contacts with North

Carolina because the LG Defendants attempted to preclude the distribution and sale

of 18650 cells for use by individual consumers in vaping devices and did not serve
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

that market in the State. The trial court then dismissed Plaintiff’s complaint—and

by necessary implication denied further jurisdictional discovery—by focusing on

causation, without considering whether Plaintiff’s claims otherwise related to the LG

Defendants’ alleged contacts with North Carolina.

II. ANALYSIS

A. Motion to Dismiss and Specific Jurisdiction

¶ 45 Resolution of this appeal turns in no small part on recent developments in the

law of specific jurisdiction and due process. After the trial court entered its order

below, the Supreme Court of the United States decided Ford Motor Co., which held

that a non-resident defendant’s contacts with a state need not be the direct cause of

a resident plaintiff’s injuries so long as the there is a sufficient “relationship[] [that]

will support [specific] jurisdiction without a causal showing.” ___ U.S. at ___, 209 L.

Ed. 2d at 236.

¶ 46 The North Carolina Supreme Court has since weighed in as well. In Mucha v.

Wagner, 378 N.C. 167, 2021-NCSC-82, it further clarified what conduct by out-of-

state defendants suffices to demonstrate minimum contacts with North Carolina in

accordance with due process, and held this State’s courts lacked personal jurisdiction

over a Connecticut defendant in a domestic violence protection order action when he

made phone calls to his ex-girlfriend’s cellphone on the day she happened to move

from South Carolina to North Carolina.
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

¶ 47 Applying the constitutional law of specific jurisdiction as it currently stands to

the case before us,2 I would hold that the trial court erred in granting the LG

Defendants’ motions to dismiss and reverse the order dismissing Plaintiff’s claims

against them.

1. Standard of Review

¶ 48 The standard of review applicable to a trial court’s dismissal of an action for

lack of personal jurisdiction depends on the procedural posture of the case and the

pleadings and evidence before the trial court. Banc of Am. Sec. LLC v. Evergreen

Intern. Aviation, Inc., 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). There are

generally three ways in which Rule 12(b)(2) motions are brought before our trial

courts:

(1) the defendant makes a motion to dismiss without
submitting any opposing evidence; (2) the defendant
supports its motion to dismiss with affidavits, but the
plaintiff does not file any opposing evidence; or (3) both the
defendant and the plaintiff submit affidavits addressing

2 The LG Defendants did not challenge the applicability of North Carolina’s “long-

arm” statute, N.C. Gen. Stat. § 1-75.4 (2019), before the trial court or in their briefing to
this Court. Because the parties focus on the Due Process Clause of the Fourteenth
Amendment, I likewise focus my analysis on that question. Cohen v. Continental Motors,
Inc., 2021-NCCOA-449, ¶ 25. And, in any event, Plaintiff alleged personal jurisdiction over
the LG Defendants pursuant to N.C. Gen. Stat. § 1-75.4(1)(d), which grants the courts of
North Carolina jurisdiction over defendants “to the extent allowed by due process.” Dillon
v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630-31 (1977). Thus, “the
question of statutory authority [under N.C. Gen. Stat. § 1-75.4(1)(d)] collapses into the
question of whether [the defendant] has the minimum contacts with North Carolina
necessary to meet the requirements of due process.” Sherlock v. Sherlock, 143 N.C. App.
300, 303, 545 S.E.2d 757, 760 (2001) (citation omitted).
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

the personal jurisdiction issues.
Id.
¶ 49 If a defendant moves to dismiss without submitting any evidence as to personal

jurisdiction, “[t]he trial judge must decide whether the complaint contains allegations

that, if take as true, set forth a sufficient basis for the court’s exercise of personal

jurisdiction.” Id. Those allegations “must disclose jurisdiction although the

particulars of jurisdiction need not be alleged.” Bruggeman v. Meditrust Acquisition

Co., 138 N.C. App. 612, 615, 532 S.E.2d 215, 217 (2000).

¶ 50 When a defendant supports a motion to dismiss with affidavits, the trial court

resolves the motion by considering: (1) allegations in the complaint not controverted

by the defendant’s affidavit; and (2) facts in the defendant’s affidavit not controverted

because of the plaintiff’s failure to offer evidence. Banc of Am. Sec., 169 N.C. App. at

693-94, 611 S.E.2d at 182-83. Allegations in the complaint that are controverted by

evidence are no longer taken as true. Id. at 693, 611 S.E.2d at 182. “In such a case,

the plaintiff’s burden of establishing prima facie that grounds for personal

jurisdiction exist can still be satisfied if some form of evidence in the record supports

the exercise of personal jurisdiction.” Bruggeman, 138 N.C. App. at 616, 532 S.E.2d

at 218 (citation omitted).

¶ 51 If the parties file competing affidavits, as was done here, the trial court “may

hear the matter on affidavits presented by the respective parties, . . . or the court may
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

direct that the matter be heard wholly or partly on oral testimony or depositions.”

Banc of Am. Sec., 169 N.C. App. at 694, 611 S.E.2d at 183 (quotation marks and

citations omitted) (cleaned up). In the absence of an evidentiary hearing, “[t]he trial

judge must determine the weight and sufficiency of the evidence presented in the

affidavits much as a juror.” Id. (quotation marks and citations omitted) (cleaned up).

The burden remains on the plaintiff to make out a prima facie case for personal

jurisdiction, and “this procedure does not alleviate the plaintiff’s ultimate burden of

proving personal jurisdiction at an evidentiary hearing or at trial by a preponderance

of the evidence.” Bruggeman, 138 N.C. App. at 615, 532 S.E.2d at 217 (citations

omitted).

¶ 52 When this Court reviews a trial court’s ruling on a motion to dismiss for lack

of personal jurisdiction, we consider “whether the findings of fact by the trial court

are supported by competent evidence on the record.” Lab. Corp. of Am. Holdings v.

Caccuro, 212 N.C. App. 564, 567, 712 S.E.2d 696, 699 (2011) (quotation marks and

citations omitted). Unchallenged findings are binding on appeal. Id. We review de

novo whether the trial court’s findings support its conclusion as to personal

jurisdiction. Bell v. Mozley, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011).

2. Due Process and Specific Jurisdiction

¶ 53 The Due Process Clause of the Fourteenth Amendment limits a state court’s

authority to exercise personal jurisdiction over a defendant. Mucha, ¶ 8. Whether
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

the Due Process Clause permits such an exercise in a given case “requires a forum-

by-forum, or sovereign-by-sovereign, analysis.” J. McIntyre Mach, Ltd. v. Nicastro,

564 U.S. 873, 884, 180 L. Ed. 2d 765, 776 (2011). It is a fact-intensive inquiry that

protects “a nonresident defendant[’s] . . . liberty interest in not being subject to the

binding judgments of a forum with which he has established no meaningful contacts,

ties, or relations.” Beem USA Ltd.-Liab. Ltd. P’ship v. Grax Consulting LLC, 373

N.C. 297, 302, 838 S.E.2d 158, 162 (2020) (quotation marks and citations omitted).

¶ 54 The broader concept of personal jurisdiction embodied in the Due Process

Clause is also divisible into two distinct forms: (1) general jurisdiction, where the

defendant “is essentially at home in the State” where the suit is brought and thus

subject to suit, Ford Motor Co., ___ U.S. at ___, 209 L. Ed. 2d at 233 (cleaned up)

(citations omitted); and (2) specific jurisdiction, which “covers defendants less

intimately connected with a State, but only as to a narrower class of claims.” Id.
¶ 55 Typically, general jurisdiction attaches anywhere a defendant is domiciled,

incorporated, or maintains its principal place of business. Id. Specific jurisdiction,

by contrast, arises only where a defendant, directly or indirectly, “purposefully avails

itself of the privilege of conducting activities within the forum State, thus invoking

the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253, 2 L.

Ed. 2d. 1283, 1298 (1958) (citing Int’l Shoe Co. v. State of Washington, 326 U.S. 310,

319, 90 L. Ed. 95 (1945)); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S.
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

286, 297, 62 L. Ed. 2d 490, 501-02 (1980) (“[I]f the sale of a product . . . is not an

isolated occurrence, but arises from efforts of the manufacturer or distributor to

serve, directly or indirectly, the market for its product in other States, it is not

unreasonable to subject it to suit in one of those States if its allegedly defective

merchandise has there been the source of injury to its owner or to others.”). The

defendant’s activities must be intentional, voluntary, “and not random, isolated, or

fortuitous.” Ford Motor Co., ___ U.S. at ___, 209 L. Ed. 2d at 234 (quotation marks

and citation omitted). Examples of such actions include “exploiting a market in the

forum state or entering a contractual relationship centered there.” Id. (cleaned up)

(quotation marks and citation omitted). Taken together, the defendant’s contacts

with the forum must be “such that he should reasonably anticipate being haled into

court there.” World-Wide Volkswagen, 444 U.S. at 297, 62 L. Ed. 2d at 501 (citations

omitted).

¶ 56 The North Carolina Supreme Court followed this precedent in Mucha,

explaining that “[a]t a minimum, there must be some evidence from which the court

can infer that in undertaking an act, the defendant purposefully established contacts

with the State of North Carolina specifically.” ¶ 32. The decision in Mucha clarified

that to support the State’s exercise of jurisdiction, a defendant need not know that its

purposeful act will result in contacts here so long as it reasonably should know that

it is “establishing a connection with the State of North Carolina.” Id. ¶ 11. “This
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

awareness—whether actual or imputed—is what permits a court in North Carolina

to exercise judicial authority over the nonresident defendant.” Id. (emphasis added).

¶ 57 Any exercise of specific jurisdiction also turns on the plaintiff’s particular

claims, which “ ‘must arise out of or relate to the defendant’s contacts’ with the

forum.” Ford Motor Co., ___ U.S. at ___, 209 L. Ed. 2d at 234 (quoting Bristol-Myers

Squibb Co. v. Superior Court of Cal., San Francisco Cty., ___ U.S. ___, 198 L. Ed. 2d

395, 403 (2017)). This is not a “causation-only approach,” as it encompasses both

“strict causal relationships between the defendant’s in-state activity and the

litigation” and “some relationships . . . without a causal showing.” Ford Motor Co.,

___ U.S. at ___, 209 L. Ed. 2d at 235-36. The latter category of claims, although not

requiring causation, is not unconstrained and “incorporates real limits,” id. at ___,

209 L. Ed. 2d at 236, however unspecific those limits are at present. See Cohen, ¶ 48

(Tyson, J., concurring in part and concurring in the result in part) (“The majority’s

opinion in Ford does not articulate any guardrails or outer limits for lower courts to

follow when evaluating whether due process concerns prevent a court from

establishing specific personal jurisdiction over a non-forum defendant.” (citation

omitted)).

¶ 58 Wherever those limits actually fall, they must “adequately protect defendants

foreign to a forum.” Ford Motor Co., ___ U.S. at ___, 209 L. Ed. 2d at 236. Any

exercise of specific jurisdiction must “comport with fair play and substantial justice.”
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 543 (1985)

(quotation marks and citation omitted). Such a determination turns on several

factors, including:

the burden on the defendant, the forum State’s interest in
adjudicating the dispute, the plaintiff’s interest in
obtaining convenient and effective relief, the interstate
judicial system’s interest in obtaining the most efficient
resolution of controversies, and the shared interest of the
several States in furthering fundamental substantive
social policies.

Id. at 477, 85 L. Ed. 2d at 543 (quotation marks and citation omitted). These fairness

concerns “sometimes serve to establish the reasonableness of jurisdiction upon a

lesser showing of minimum contacts than would otherwise be required.” Id. at 477,

85 L. Ed. 2d at 544 (citations omitted).

¶ 59 Broadly summarized, any exercise of specific jurisdiction is subject to a three-

pronged test under the Due Process Clause, and it attaches when: (1) the out-of-state

defendant purposefully avails itself of the privileges and laws of the forum state and

thus establishes minimum contacts with the jurisdiction, Hanson, 357 U.S. at 253, 2

L. Ed. 2d. at 1298; (2) the plaintiff’s claims arise out of or relate to the defendant’s

minimum contacts with the forum state, Ford Motor Co., ___ U.S. ___, ___, 209 L. Ed.

2d at 234; and (3) the exercise of jurisdiction “comport[s] with fair play and

substantial justice.” Burger King Corp., 471 U.S. at 476, 85 L. Ed. 2d at 543.

3. Prima Facie Showing of Specific Jurisdiction
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

¶ 60 Applying the above principles to this case, and in light of the applicable

standard of review, I would hold that Plaintiff has met his burden of establishing a

prima facie case of specific jurisdiction at this stage of the proceedings. I limit my

analysis to whether the LG Defendants purposefully availed themselves of North

Carolina’s laws and whether Plaintiff’s claims arise out of or relate to that purposeful

availment—the first two prongs of any specific jurisdiction analysis—as the LG

Defendants do not argue that fair play and substantial justice concerns preclude an

exercise of jurisdiction under the third prong of the specific jurisdiction test.

a. Purposeful Availment and Stream of Commerce

¶ 61 Plaintiff’s complaint alleges that both LG Defendants caused the batteries at

issue in this case to be sold in North Carolina. The complaint alleges that LG Chem

“caused those batteries to be distributed and sold throughout the United States,

including within the State of North Carolina,” and that LG Chem did so “with the

knowledge, understanding, and/or expectation that they will be purchased by

consumers in this State.” The complaint contains similar allegations regarding LG

America, claiming that it “did substantial and continuous business in the State of

North Carolina by marketing, distributing, and selling or causing to be sold lithium-

ion batteries in the State,” all with the “knowledge, understanding, and/or

expectation that they will be purchased by consumers in the State.” These factual

allegations, which need not contain particulars at this stage of litigation, Bruggeman,
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

138 N.C. App. at 615, 532 S.E.2d at 217, establish that the LG Defendants

purposefully caused LG 18650 batteries to be sold to consumers in North Carolina,

and thus served a market for the product in the State.

¶ 62 The LG Defendants’ discovery responses and affidavits only partially rebut the

jurisdictional allegations of Plaintiff’s complaint. While LG Chem stated in its

discovery responses that it did not sell or distribute 18650 batteries “intended” for

North Carolina, LG Chem’s subjective intent is not dispositive. See Mucha, ¶ 11

(holding that a defendant purposefully avails itself of North Carolina’s laws when it

“knew or reasonably should have known that by undertaking some action, the

defendant was establishing a connection with the State of North Carolina. This

awareness—whether actual or imputed—is what permits a court in North Carolina

to exercise judicial authority over the nonresident defendant.”); see also J. McIntyre

Mach, Ltd., 564 U.S. at 883, 180 L. Ed. 2d at 776 (“[I]t is the defendant’s actions, not

his expectations, that empower a State’s courts to subject him to judgment.”). Nor

does LG America’s discovery responses—representing LG America only assisted with

sales of 18650 batteries to companies in Texas and Illinois and never itself sold or

distributed the batteries in North Carolina—dispense with the issue. See, e.g., World-

Wide Volkswagen, 444 U.S. at 297, 62 L. Ed. 2d at 501 (acknowledging “indirect”

service of a market may establish personal jurisdiction).
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

¶ 63 So, while LG Chem may not have sold or distributed 18650 batteries directly

to North Carolina or “intended” for them to be used in vape pens in the State, one can

infer that it nonetheless may have indirectly served a North Carolina market for

these batteries when it knowingly “caused those batteries to be distributed and

sold . . . within the State of North Carolina,” as alleged in Plaintiff’s complaint.

Similarly, that LG America has not itself sold or distributed to anyone in North

Carolina does not mean that LG America, by marketing batteries in North Carolina

and assisting with out-of-state transactions, did not knowingly “caus[e] [batteries] to

be sold . . . in the State,” as the complaint contends, directly or otherwise.

¶ 64 Consistent with the LG Defendants’ limited and specific denials, the trial court

found that the LG Defendants did not directly distribute or sell 18650 batteries to

anyone in North Carolina for use in vaping or e-cigarette devices. Those findings

focus strictly on whether the LG Defendants made contact with the State for the

specific purpose of selling 18650 batteries to individual consumers for use in vape

pens and e-cigarettes. The trial court made no findings as to whether the LG

Defendants served, directly or indirectly, other markets for these same batteries in

North Carolina. The latter scenario, unrebutted by the LG Defendants’ evidence, can

be inferred from Plaintiff’s jurisdictional allegations. See Williams v. Institute for

Computational Studies at Colorado State University, 85 N.C. App. 421, 428, 355

S.E.2d 177, 182 (1987) (“The failure to plead the particulars of jurisdiction is not fatal
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

to the claim so long as the facts alleged permit the inference of jurisdiction.”). We

must therefore take those allegations as true. Banc of Am. Sec., 169 N.C. App. at

693-94, 611 S.E.2d at 182-83. And, following specific jurisdiction caselaw, these

unrebutted allegations are sufficient to establish purposeful availment at this early

stage of litigation.

¶ 65 That Plaintiff is not in the North Carolina market intended by the LG

Defendants does not negate the allegations that they knowingly serve a market for

batteries here. And knowingly serving a market in the forum state is a purposeful

availment of that jurisdiction’s laws. See Ford Motor Co., ___ U.S. at ___, 209 L. Ed.

2d at 236 (“[T]his Court has stated that specific jurisdiction attaches in cases identical

to the ones here—when a company cultivates a market for a product in the forum

State and the product malfunctions there.” (citing World-Wide Volkswagen, 444 U.S.

286, 62 L. Ed. 2d 490) (emphasis added)); see also Walden v. Fiore, 571 U.S. 277, 285,

188 L. Ed. 2d 12, 20 (2014) (“[W]e have upheld the assertion of jurisdiction over

defendants who have purposefully reached out beyond their state and into another

by, for example, . . . circulating magazines to ‘deliberately exploit’ a market in the

forum State.” (cleaned up) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770,

781, 79 L. Ed. 2d 790, 801 (1984) (emphasis added))); Chloe v. Queen Bee of Beverly

Hills, LLC, 616 F.3d 158, 171 (2nd Cir. 2010) (“[J]urisdiction is appropriate in New

York because Queen Bee has developed and served a market for its products there.”
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

(citations omitted) (emphasis added)); Genetic Implant Systems, Inc. v. Core-Vent

Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997) (holding a defendant could be sued in

Washington in part because “it engaged in a program to develop a market in

Washington”).3

¶ 66 Finally, our Supreme Court’s recent holding in Mucha that the record must

support at least an “infer[ence] that in undertaking an act, the defendant

purposefully established contacts with the State of North Carolina specifically,” ¶ 32,

does not compel a different resolution. Plaintiff made an unrebutted allegation in his

complaint that LG America specifically marketed lithium-ion batteries in North

Carolina. As for LG Chem, the complaint alleges that it “plac[ed] its lithium-ion

batteries into the stream of commerce with the knowledge, understanding, and/or

expectation that they will be purchased by consumers in the State.” Though LG

Chem denied that it sold or distributed 18650 batteries to or intended for North

Carolina, Plaintiff’s allegations encompass indirect service of the North Carolina

marketplace through distributors that LG Chem knew, understood, and expected to

reach North Carolina. Given: (1) the particulars of these relationships need not be

3 At least one other court has held that specific jurisdiction could be exercised over

LG Chem in an 18650 vape-pen products liability suit under this exact rationale despite
virtually identical evidence from LG Chem showing it only served a market for
sophisticated, industrial consumers who installed the batteries in other manufactured
products like power tools. Tieszen v. EBay, Inc., 2021 WL 4134352, *5-*6 (unpublished) (D.
S.D. Sept. 10, 2021).
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

alleged in the complaint, Bruggeman, 138 N.C. App. at 615, 532 S.E.2d at 217; (2)

Mucha’s acknowledgment that specific jurisdiction attaches when “the defendant

knew or reasonably should have known that by undertaking some action, the

defendant was establishing a connection with the State of North Carolina,” ¶ 11; and

(3) uncontroverted evidence that LG Chem’s 18650 batteries are readily available for

purchase in dozens of vape shops across North Carolina, I am satisfied that the record

permits a necessary inference that LG Chem “purposefully established contacts with

the State of North Carolina specifically.” Id. ¶ 32. See also id. ¶ 14 (quoting and

citing favorably to Keeton, 465 U.S. at 781, 79 L. Ed. 2d at 801, which held specific

jurisdiction attached to a magazine publisher because the ready availability of the

magazine in the forum state evidenced a “continuous[] and deliberate[] exploit[ation]”

of the state’s market).

b. Arising Out of or Relating to

¶ 67 Whether Plaintiff’s claims arise out of or relate to the LG Defendants’ contacts

with North Carolina also presents a complicated question. As the trial court’s order

recognizes, the fact that neither of the LG Defendants manufactures, sells, or

distributes 18650 batteries for individual use in vaping devices means “Plaintiff’s

alleged injuries did not arise from any activities of LG Chem . . . [or] from any

activities of [LG America].”

¶ 68 Since the trial court’s ruling, however, we now have the benefit of Ford Motor
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

Co., which clarified that the “arise out of or relate to” standard encompasses two

distinct concepts: “[t]he first half of that standard asks about causation; but the back

half, after the ‘or,’ contemplates that some relationships will support jurisdiction

without a causal showing.” ___ U.S. at ___, 209 L. Ed. 2d at 236. Applying that

decision to the record before us, I would hold that Plaintiff has at this time4

established a prima facie showing that his claim “relates to” the LG Defendants’

contacts with North Carolina.

¶ 69 United States Supreme Court decisions addressing specific jurisdiction in the

products liability context have not generally concerned themselves with how the

injured plaintiffs used the products in question or the products’ intended consumers

or uses. Instead, the Court has focused strictly on the injection of the product itself

into the forum’s marketplace. The Court in Ford Motor Co. altogether omitted

intended consumer use in its analysis of the “related to” prong:

[S]pecific jurisdiction attaches in cases identical to the ones
here—when a company like Ford serves a market for a
product in the forum State and the product malfunctions
there. . . . Or said another way, if Audi and Volkswagen’s
business deliberately extended into Oklahoma (among other
States), the Oklahoma’s courts could hold the companies
accountable for a car’s catching fire there—even though the
vehicle had been designed and made overseas and sold in
New York.

4 Whether that prima facie showing can be maintained after further discovery and at

a later stage of this litigation is not a question before us today.
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

___ U.S. at ___, 209 L. Ed. 2d at 237 (citing World-Wide Volkswagen, 444 U.S. at 295,

297, 62 L. Ed. 2d at 501-02) (emphasis added). Ford also expressly held that the

reason for the injured plaintiff’s purchase of a product is not a jurisdictional concern.

See id. at ___, 209 L. Ed. 2d at 239 (“Nor should jurisdiction in cases like these ride

on the exact reasons for an individual plaintiff’s purchase, or on his ability to present

persuasive evidence about them.”). And Ford Motor Co. was just the latest of many

decisions considering the broader market rather than intended use within a

jurisdiction. See id. at ___, 209 L . Ed. 2d at 237 (cataloging similar cases).

¶ 70 Holding Plaintiff’s injury in this case was “related to” the LG Defendants’

contacts with North Carolina as detailed above is consistent with Ford Motor Co.

Applying the same analysis to the record here, Plaintiff’s claim is related to the LG

Defendants’ North Carolina-focused activities because it alleges: (1) the LG

Defendants serve a market for 18650 batteries in North Carolina; (2) Plaintiff

purchased such a battery in North Carolina; and (3) the battery Plaintiff purchased

in North Carolina malfunctioned, caught fire, and injured Plaintiff in North Carolina.

This analysis is also consistent with holdings by other courts that are not binding,

but that I find persuasive. In LG Chem, Ltd. v. Lemmerman, the Georgia Court of

Appeals relied on Ford Motor Co. and held that specific jurisdiction existed over the

LG Defendants in an 18650 vaping case because LG Chem served a market for the

battery in Georgia, and the plaintiff “is a resident of Georgia, used LG Chem’s
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

allegedly defective battery in Georgia, and suffered injuries when that battery

allegedly malfunctioned in Georgia.” 863 S.E.2d 514, 524 (2021). See also Tieszen,

2021 WL 4134352 at *6 (rejecting LG Chem’s argument that specific jurisdiction did

not attach because it did not serve a market for standalone e-cigarette batteries and

holding its contacts with South Dakota related to the plaintiff’s claim, “even if he was

not LG Chem’s intended consumer,” because “(1) LG Chem sells and distributes

18650 . . . batteries in South Dakota, (2) [the plaintiff] purchased such a battery online

while in South Dakota, and (3) [the plaintiff] was injured by an 18650 . . . battery in

South Dakota”). Cf. Cohen, ¶ 30 (holding specific jurisdiction attached when the out-

of-state defendant served the North Carolina market for airplane Starter Adapters

“directly or indirectly” and “its allegedly defective Starter Adapter has there been the

source of injury to its owners.” (cleaned up) (quotation marks and citation omitted)).

¶ 71 The LG Defendants argue that Plaintiff’s claims are not related to their

contacts with North Carolina because they never injected 18650 batteries into North

Carolina’s marketplace for use by individual consumers as standalone batteries for

vape pens. But any alleged alteration or misuse of an 18650 battery is a defense on

the merits to Plaintiff’s products liability suit, not a dispositive factor in the specific

jurisdiction analysis. North Carolina’s product liability statutes provide:

No manufacturer or seller of a product shall be held liable
in any product liability action where a proximate cause of
the personal injury . . . was either an alteration or
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

modification of the product by a part other than the
manufacturer or seller . . . . [A]lteration or modification
includes changes in the . . . use of the product from that
originally designed, tested, or intended by the
manufacturer.

N.C. Gen. Stat. § 99B-3 (2019).

¶ 72 Other jurisdictions, both before and after Ford Motor Co., have reached this

same conclusion. See, e.g., Berven v. LG Chem, Ltd., 2019 WL 1746083, *11 (E.D.

Cal. April 18, 2019) (unpublished), adopted by Berven v. L.G. Chem, Ltd., 2019 WL

4687080 (E.D. Cal. Sept. 26, 2019) (unpublished) (holding that whether use of an

18650 battery by an individual consumer in a vape pen was the result of unintended

distribution and misuse went to the merits of a product liability suit, not specific

jurisdiction); LG Chem Am., Inc. v. Morgan, 2020 WL 7349483, *10 (Tex. App. Ct.

Dec. 15, 2020) (unpublished) (“[W]hether LGC’s batteries were used in a foreseeable

manner or were misused goes to the merits of a products liability

action. . . . Jurisdiction cannot turn on whether a defendant denies wrongdoing—as

virtually all will.” (quotation marks and citation omitted)); Lemmerman, 863 S.E.2d

at 524 (“[W]hether there was an unforeseeable misuse of the product by the injured

plaintiff goes to the substantive merits of a products liability action and can be
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

addressed in that context”).5 I acknowledge that decisions by courts in other states,

and particularly unpublished decisions, are not controlling authority. But, given the

developing state of specific jurisdiction caselaw, their analysis applying that law to

products liability suits brought against the LG Defendants for exploding 18650

batteries used in vape pens is a helpful source of reference and persuasive in this

case.

¶ 73 Such a holding does not contravene the “real limits” of the “related to” prong

acknowledged by the United States Supreme Court. Ford Motor Co., ___ U.S. at ___,

209 L. Ed. 2d at 236. I would not hold, for example, that Plaintiff may sue LG Chem

here because it sources lithium materials from North Carolina companies, nor would

5 The LG Defendants also cite decisions from other jurisdictions ruling in their favor

on specific jurisdiction. However, those cases were either decided pre-Ford Motor Co., are
distinguishable on their facts or law, or both. For example, several of those decisions found
the plaintiffs’ allegations failed to specifically allege a causal connection to the plaintiff’s
claims. See, e.g., Schexnider v. E-Cig Central, LLC, 2020 WL 6929872, *8-*9 (Ct. App. Tx.
Texarkana Nov. 25, 2020) (unpublished) (holding Texas lacked specific jurisdiction over LG
Chem because: (1) there were no unnegated allegations or evidence that LG Chem
indirectly targeted Texas through third-party distributors; and (2) “[t]here was no evidence
or unnegated allegations that [plaintiff’s] claims arose from LG Chem’s only Texas
contacts”). Under North Carolina law, however, a plaintiff’s allegations of jurisdiction need
not contain such particulars at the 12(b)(2) stage, Bruggeman, 138 N.C. App. at 615, 532
S.E.2d at 217, and Ford Motor Co. makes clear that claims may be brought through specific
jurisdiction if they either arise out of or relate to the plaintiff’s claims. Ford Motor Co., ___
U.S. ___, ___, 209 L. Ed. 2d at 236. Other decisions cited by the LG Defendants are
distinguishable on their facts. See, e.g., Davis v. LG Chem, Ltd., 849 Fed.Appx. 855, 857-58
(11th Cir. 2021) (unpublished) (holding Oklahoma plaintiffs who purchased 18650 batteries
in Oklahoma that exploded in Oklahoma could not sue LG Chem in Georgia simply because
LG America is based there).
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

I hold that LG America may be sued for the injuries alleged because it sells and

markets petrochemical products in the State. Neither of those contacts involves the

injection of an 18650 battery into the North Carolina marketplace and injury to a

North Carolinian from that product. Nor would my holding permit a South Carolina

resident, injured in that state by an 18650 battery sold there, to bring suit in North

Carolina’s courts, as the South Carolina plaintiff’s injury would not be related to the

LG Defendants’ contacts with North Carolina. Indeed, such an out-of-state plaintiff

would run up against the same “real limit” imposed in Bristol-Myers Squibb, in which

the United States Supreme Court held that residents of California injured in that

state could bring products liability claims against a non-resident defendant

consistent with specific jurisdiction principles, but non-California plaintiffs suing for

identical injuries suffered outside the state were barred from pursuing any claims

there. ___ U.S. at ___, 198 L. Ed. 2d at 14-16.

¶ 74 I also note that such a holding would not be the final word on this issue in this

case. The LG Defendants could ultimately introduce sufficient evidence showing that

they have not maintained minimum contacts with North Carolina relating to

Plaintiff’s claims as the matter proceeds to trial. See Bruggeman, 138 N.C. App. at

615, 532 S.E.2d at 217 (observing that denial of a motion to dismiss for lack of

personal jurisdiction based on affidavits “does not alleviate the plaintiff’s ultimate

burden of proving personal jurisdiction at an evidentiary hearing or at trial by a
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

preponderance of the evidence” (citations omitted)). I, however, cannot reach that

conclusion based on the caselaw, our standard of review, and the record before us at

this early stage of litigation.

B. Denial of Discovery

¶ 75 I also dissent from the majority’s determination that the trial court did not

abuse its discretion by denying Plaintiff’s motion to compel additional jurisdictional

discovery. To be sure, whether to grant such a motion lies in the sound discretion of

the trial court. Sessions v. Sloane, 248 N.C. App. 370, 381, 789 S.E.2d 844, 853-54
(2016). But a discretionary ruling made under a misapprehension of law amounts to

an abuse of discretion. Orren v. Orren, 253 N.C. App. 480, 482, 800 S.E.2d 472, 474
(2017). A trial court likewise abuses its discretion when it “is clothed with discretion,

but rules as a matter of law, without the exercise of discretion.” Capps v. Lynch, 253

N.C. 18, 22, 116 S.E.2d 137, 141 (1960). Commission of “[a]n error of law is by

definition an abuse of discretion.” Sen Li v. Zhou, 252 N.C. App. 22, 26, 797 S.E.2d

520, 523 (2017) (citations omitted).

¶ 76 The trial court dismissed the complaint and impliedly denied further

jurisdictional discovery based on the legal conclusion that Plaintiff’s claims do not

“arise out of” the LG Defendants’ contacts with North Carolina; that is, Plaintiff could

not show a causal link between his claims and the LG Defendants’ contacts with the

State. But a causal link is not necessary if the claims nonetheless “relate to” a
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

defendant’s contacts with the forum. Ford Motor Co., ___ U.S. at ___, 209 L. Ed. 2d

at 236. I note that the trial court did not have the benefit of Ford Motor Co. at the

time it entered its order. But Ford Motor Co. is nonetheless controlling, even in a

matter the trial court decided before the Supreme Court’s decision.

¶ 77 Because, in my view, Plaintiff has made a prima facie showing that the LG

Defendants have purposefully availed themselves of North Carolina, I would remand

the matter to the trial court to consider whether further jurisdictional discovery is

warranted in light of the “related to” standard as defined in Ford Motor Co. See, e.g.,

Capps, 253 N.C. at 22, 116 S.E.2d at 141 (“Where, as here, the court is clothed with

discretion, but rules as a matter of law, without the exercise of discretion, the

offended party is entitled to have the proposition reconsidered and passed upon as a

discretionary matter. . . . [W]here it appears that the judge below has ruled upon the

matter before him upon a misapprehension of the law, the cause will be remanded to

the Superior Court for further hearing in the true legal light.” (quotation marks and

citation omitted)).

III. CONCLUSION

¶ 78 The LG Defendants introduced evidence rebutting allegations that they

directly sold or distributed 18650 batteries into North Carolina for individual use as

standalone batteries in vaping and e-cigarette devices. But this evidence does not

negate the jurisdictional allegations in Plaintiff’s complaint, which encompass sales,
 MILLER V. LG CHEM

2022-NCCOA-55

INMAN, J., dissenting

marketing, and distribution, both direct and indirect, into North Carolina to serve

other, non-vaping related markets for 18650 batteries in this State. Those

unrebutted jurisdictional allegations and the inferences drawn therefrom establish

minimum contacts with North Carolina. Further, Plaintiff’s claims “relate to” these

contacts, as he is a North Carolina consumer of 18650 batteries who purchased and

was injured by such a battery in North Carolina. See Ford Motor Co., ___ U.S. at ___,

209 L. Ed. 2d at 236. I would therefore hold that Plaintiff has met its burden of

establishing a prima facie case of specific jurisdiction at this stage of the action,

reverse the trial court’s order to the contrary, and remand for further proceedings not

inconsistent with this opinion. Short of that, I would remand the matter back to the

trial court to evaluate, in its discretion, whether further jurisdictional discovery is

warranted on the issue of whether Plaintiff’s claims “relate to” the LG Defendants’

contacts with North Carolina. I respectfully dissent.